UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Dawn Parker,
    Plaintiff,

v.                            Civil No. 2:05-CV-138

JoAnne B. Barnhart,
Commissioner of Social
Security,
    Defendant.

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED
5-26-06
BY
DEPUTY CLERK

OPINION AND ORDER
(Doc. Nos. 3, 4, 10)

Dawn Parker appeals the decision of the Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance benefits ("DIB") and Supplemental Security Income benefits ("SSI"). Parker moves to set aside the decision of the Commissioner and to remand either for the calculation of benefits or for further consideration. The Commissioner opposes Parker's motion and moves for an order affirming her decision.

The motion of the Commissioner is GRANTED, and the motion of the claimant is DENIED.

BACKGROUND

Procedural History

On February 1, 2000, Parker filed applications[1] for DIB and SSI, alleging disability since December 12, 1996[2]. Tr. 61-63, 394-397. Following denial of her applications initially and upon reconsideration, she requested a hearing before an administrative law judge ("ALJ"). The hearing was held on July 17, 2003, at which Parker, who was represented by counsel, testified. Tr. 413-429. In a decision dated December 2, 2003, the ALJ determined that Parker suffered from the severe impairments of polysubstance abuse disorder, depression, anxiety, and obsessive compulsive disorder. Tr. 22. The ALJ found that these impairments did not meet the listings for presumptive disability. He then determined that Parker's substance abuse disorder was a material contributing factor to a finding of disability. Since the ALJ found that Parker was able to perform substantial gainful activity when she was

---

[1] Parker had previously applied for DIB and SSI on February 1, 1996. Tr. 57-60, 382-385. These applications were denied initially, and Parker did not seek further review.

[2] Parker's insured status for DIB expired on June 30, 1999. Tr. 17. To be eligible for DIB she must be determined to be disabled on or before that date.

not abusing drugs and alcohol, the ALJ found her not disabled. The Appeals Council affirmed this decision on March 24, 2005. (Tr. 7-9).

Standard of Review

In reviewing the Commissioner's decision, the court limits its inquiry to a "review [of] the administrative record *de novo* to determine whether there is substantial evidence supporting the Commissioner's decision and whether the Commissioner applied the correct legal standard." Machadio v. Apfel, 276 F.3d 103, 108 (2d Cir. 2002); *see* 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Even if a court could draw different conclusions after an independent review of the record, the court must uphold the Commissioner's decision when it stands on substantial evidence and the proper legal principles have been applied. See 42 U.S.C. § 405(g). The court may not substitute its judgment for that of

the Commissioner. <u>Yancey v. Apfel</u>, 145 F.3d 106, 111 (2d Cir. 1998).

## DISCUSSION

Parker raises three issues for review. She contends that (1) the ALJ failed to follow the regulatory framework for determining whether her substance abuse was a contributing factor to a finding of disability; (2) the ALJ's finding that substance abuse was a contributing factor material to disability is not supported by substantial evidence; and (3) her impairments met the listings.

1. Substance Abuse Regulatory Framework

In 1996 the Social Security Act was amended to provide that a person "shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. §§ 423(d)(2)(C) and 1382c(a)(3)(J); <u>Porter v. Chater</u>, 982 F. Supp. 918, 921 (W.D.N.Y. 1997). This amendment was intended to eliminate disability benefits if the claimant lacked an impairment independent of

alcoholism or drug addiction. Brown v. Apfel, 192 F.3d 492, 498 (5th Cir. 1999); Torres v. Schweiker, 125 F.3d 166, 169 (3rd Cir. 1997). By this amendment Congress intended to prevent substance abusers from receiving cash benefits from the government. Brown, 192 F.3d at 497. The Commissioner has the responsibility to evaluate which of the claimant's limitations would remain if the claimant ceased the use of drugs and alcohol and whether the remaining limitations would be disabling under the Act. 20 C.F.R. §§ 404.1535(b)(2); 416.935(b). The Commissioner's regulations provide that the claimant has the burden of establishing that she would remain disabled even if she ceased the use of drugs and/or alcohol. 20 C.F.R. §§ 404.1535; 416.935; Jones v. Apfel, 997 F. Supp. 1085, 1093 (N.D. Ind. 1997).

When the ALJ determines that the claimant has an impairment related to substance abuse, the Commissioner's regulations require a two-step analysis. See Warren v. Barnhart, 2005 WL 1491012 (E.D. Pa. June 22, 2005); see also 20 C.F.R. § 404.1535(a)(2005). First, the ALJ determines whether the claimant is

5

disabled considering the effects of substance abuse. If the ALJ determines that a claimant is disabled in light of medical evidence of drug addiction or alcoholism, then the ALJ must "determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability." 20 C.F.R. § 404.1535(a). This two-step process is incorporated into the SSA's internal operating manual that directs how "ALJs ought to incorporate their consideration of a claimant's alcohol use into the regular five-step disability analysis." Warren, 2005 WL 149012, at *9. The ALJ should first follow the standard five-step disability determination process taking into account the effects of substance abuse. If the ALJ finds that the claimant is not disabled, then the inquiry ends. However, if the ALJ finds that the claimant is disabled and there is medical evidence of substance abuse, then the ALJ must determine "whether the claimant's [substance abuse] is a contributing factor material to his disability (the "material determination")." Id. at * 10. Substance abuse is a material factor only when there is substantial evidence

that the claimant would not be disabled if she stopped using these substances.  Id.  The ALJ "must identify which of the claimant's current physical and mental limitations would remain if he stopped using" these substances.  Id. at * 11.  Parker contends that the ALJ failed to follow this process.

The ALJ found that Parker suffered from depression, anxiety, and obsessive compulsive disorder as well as substance abuse.  Tr. 22.  He found that when Parker was abusing alcohol, "her ability to maintain attendance or a schedule and complete a normal work day or work week would be markedly limited."  Tr. 23.  When Parker was not abusing alcohol, the ALJ found that her ability to maintain work attendance would only be moderately limited.  *Id.*  Accordingly, he found that the substance abuse was a material contributing factor to her disability.

The ALJ followed the correct analysis.  The ALJ properly considered the effect of alcohol and her other impairments on her ability to work.  He found that Parker's other disorders of depression, anxiety and obsessive compulsion would only moderately affect her

7

ability to work. Tr. 21. However, when substance abuse was added to the mix, she was unable to work. He determined that Parker's alcohol abuse was the difference in her ability to work on a regular basis. When she was not abusing alcohol, she would be able to report for work. Her abuse of alcohol made her unable to maintain a regular job. While Parker may fault the ALJ for his determination that substance abuse was material to a finding of disability, the ALJ followed the procedures set forth in the Commissioner's regulations. § 404.1535(b)(2).

2. Substance Abuse as Contributing Factor

Parker's primary argument is that the ALJ erred by finding that her substance abuse was material to a finding of disability. She contends that the record demonstrates that even when she was sober, her impairments made her unable to perform substantial gainful activity.

The ALJ's opinion very carefully details the medical reports and Parker's history of substance abuse. Prior to 1999 all the medical reports contain references to Parker's long-standing substance abuse problem. Tr. 133-125, 137-140, 144-146, 148-152, 155-

156, 160-162, 164, 180-181, 186, 211-225, 244-250, 253-278. The ALJ noted several findings which indicate that he did in fact review the evidence, including statements that Parker had a long history of alcohol abuse. Parker argues that since her obsessive compulsive disorder, depression, and anxiety continued during sporadic periods of abstinence, her substance abuse was not material to the finding of disability. However, even if her nonexertional impairments were present in the absence of substance abuse, these impairments must render her unable to perform substantial gainful activity.

While there is no doubt that the medical evidence indicates that the claimant has nonexertional mental difficulties, the treatment record establishes that any mental limitations were connected with alcohol abuse. Although the reports of the examining medical sources mention depression, anxiety, and obsessive compulsive disorder, the only impairment which significantly limited the claimant's ability to interact with others and perform substantial gainful activity was her substance abuse. For example, the report of Dr. Powell in July 1999 indicated that Parker was suffering from

9

very severe anxiety after her recent release from jail. Tr. 228. However, in the same report Dr. Powell stated that Parker was alert, oriented, had above average intelligence, with good concentration and insight, and fairly good judgment. Id. Parker was also examined a number of times by Dr. Michaels between June 2000 and January 2002. Tr. 229-243. At least two of those examinations took place while Parker was incarcerated. The common thread throughout the reports is Parker's alcohol abuse and its relationship to all her other impairments, especially the obsessive compulsive disorder and anxiety. Tr. 233, 240-241, 243. The ALJ could reasonably interpret the reports as finding that these impairments were secondary to the substance abuse problem. See Gould v. Apfel, No. 00-131, 2000 WL 1499802, at * 4 (D. Me., Oct. 6, 2000) ("None of the medical records that refer to the diagnoses of . . . depression or personality disorder states whether these conditions are secondary to, or independent of, the plaintiff's substance abuse."). Since Parker has the burden to prove that the substance addiction is not a material contributing factor to her disability, she has failed to meet her burden. Id.

3. Impairments of Listing-Level Severity

Parker contends that the ALJ erred by finding that she did not meet the listing § 12.06 for Anxiety Related disorders.

The burden is on the claimant to prove that she has a listed impairment that is expected to last the requisite twelve months. Parker contends that she met the requirements of § 12.06 because she suffered from "recurrent obsessions or compulsions which are a source of marked distress" under subpart A.4 of § 12.06. She also contends that she had a marked restriction in activities of daily living and marked difficulties in maintaining social functioning under subpart B.1 and B.2 of § 12.06. Section 12.06 requires this level of severity for an individual to be found presumptively disabled. In support of her contentions she references the multiple Global Assessment of Functioning ("GAF") rating in the record.

The GAF scale is a tool used to rate an individual's overall level of functioning and unless otherwise noted refers to the level of functioning at the time of the evaluation. See Am.Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders 30

(4th ed. 1994) ("DSM-IV"). Between July 1991 and October 2002 Parker had GAF ratings between 35 and 50. A GAF of 41 to 50 indicates "serious symptoms . . . OR any serious impairment in social, occupational or school functioning (e.g., no friends, unable to keep a job)." Tr. 236. A GAF score of 31 to 40 indicates "some impairment in reality testing or communication . . . OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood . . . ." Id. While a low GAF score may be evidence of severe limitations of daily functioning, it is only one factor in a determination of an individual's ability to perform substantial gainful activity. Under the Commissioner's regulations, the GAF score is not *per se* conclusive on the issue of a listed impairment. If this were the case, the Commissioner's regulations would compare a GAF score with a determination of disability.

Parker argues that the GAF score is a summary of the treating source's opinion and thus is entitled to controlling weight under the treating physician regulation. This argument is not persuasive. Since

the score is an evaluation at one point in time, it must be examined along with the treating source's notes to determine what weight to give to the GAF score.

The ALJ carefully reviewed the GAF reports in light of the reports of the evaluating medical sources. Tr. 18-20. Although the ALJ did not specifically reference the GAF scores, he did review the reports of the reporting sources. His decision that Parker did not suffer from a listed impairment is supported by substantial evidence.

Parker's first two GAF scores were 50 on July 28, 1999 and June 7, 2000. In both instances she had been recently released from jail, the latter after four years. Tr. 199, 230, 233. Parker was given a GAF of 45 on April 17, 2001 while she was incarcerated. Tr. 241. The remaining assessments were all made in the context of a stressful situation and with the spectre of alcohol present. Tr. 235, 380. Accordingly, the GAF scores are not per se controlling on the issue of listings-level impairments.

Parker claims that she meets the requirements of § 12.06 because she has marked limitations in social

functioning and activities of daily living under subpart B.1 and 2.  However, as the ALJ recognized, the reports accompanying the various GAF scores do not reflect this level of severity.  Dr. Powell found that Parker was cooperative and pleasant, with normal speech and coherent thought processes.  Tr. 227.  Dr. Michaels reported that Parker had social relationships including a good relationship with her grandmother with whom she was living.  Tr. 233.  Dr. Cherian reported similar results.  Tr. 237-241.  Finally, nurse Bethel found that Parker was attending AA meetings and had a cooperative attitude.  Tr. 377-378.  Although Parker reported that she did not socialize, her social activities contradicted this report.  While a marked limitation in social functioning does not require a claimant to sit home alone all day, Parker's activities demonstrate more than that.  She is able to get out and maintain social relationships.

　　　Nor does she demonstrate a marked limitation in activities of daily living.  She was able to care for her baby, cook, do housework and shop.  Tr. 116-117, 418, 428.  The ALJ reviewed the relevant medical

14

reports in the record and found that Parker's impairments did not meet the listings. His decision is supported by substantial evidence.

Finally, in further support of her contention that her impairments meet the listings, Parker points to the report of a consulting physician who found that she meets the listing at § 12.09 for substance abuse. Tr. 342. While the report does state that Parker has a severe impairment and meets the listing at § 12.09, the consulting physician also notes Parker's functional limitations. Tr. 353. He concludes that without substance abuse Parker would have moderate limitations in functioning; with substance abuse as a factor Parker's functioning becomes marked. Tr. 353. This supports the ALJ's conclusion that without substance abuse Parker would be able to perform substantial gainful activity.

## CONCLUSION

The decision of the Commissioner is AFFIRMED.

Dated at Burlington, in the District of Vermont, this 26th day of May, 2006.

/s/ Jerome J. Niedermeier
Jerome J. Niedermeier
United States Magistrate Judge
